[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
By complaint dated June 18, 1998, the plaintiff wife, Julie M. Cowles, commenced this action seeking a dissolution of marriage on the grounds of irretrievable breakdown and other relief. The defendant appeared through counsel and filed a cross-complaint dated June 19, 1998. Both parties appeared with counsel May 22, 2000, August 31, 2000 and September 1, 2000 and the plaintiff proceeded on her complaint. The parties presented testimony and introduced documentary evidence. The court, after hearing the testimony and reviewing the exhibits, makes the following findings of fact. CT Page 3959
The plaintiff, whose maiden name was Julie M. Taracani, married the defendant on June 22, 1985 in West Hartford, Connecticut. She has resided continuously in the State of Connecticut for at least twelve months next preceding the filing of the complaint. All statutory stays have expired. There were no children born to the plaintiff wife since the date of the marriage. The court further finds that neither party has been the recipient of any aid from the State of Connecticut or any municipality thereof
The plaintiff is forty-six years of age, she has high blood pressure and some dental problems but is otherwise in good health and capable of gainful employment on a full-time basis. The defendant is in good health and also capable of gainful employment on a full-time basis. For the past several years both parties have been employed in a full-time capacity for a family owned business known as Garden Art, Inc. Each owns 50% of the stock of the business. Each derives the same income from the business as well as "perks" such as a leased Jaguar and medical insurance coverage. Pursuant to court order the defendant is currently operating the business.
The plaintiff lives in the marital residence located at 32 Two Mile Road in Farmington, Connecticut. The defendant lives in a condominium located at 175 Berlin Avenue in Southington, Connecticut. The condominium was purchased by the defendant subsequent to the commencement of this action by the defendant from his own funds and the plaintiff has waived any claim to this property.
The defendant was previously married and had two children by his first wife. His first marriage ended in divorce in 1984. The defendant owned a single family residence on Berlin Avenue in Southington. It was a former cottage and the parties both participated in gutting the property and renovating it into a year-round home. After their marriage the defendant's children periodically lived with them for several years until they moved to Florida. The plaintiff participated in their care.
The parties purchased the marital residence at the peak of the market. As a result of an oil spill the property will need to be cleaned up. The cost of the cleanup is in dispute. Litigation has been instituted to recover the cleanup costs.
Between 1985 and 1990 the parties were employed in a variety of jobs with the plaintiff focusing on office work and bookkeeping and the defendant engaging in sales and manufacturing. In 1990 the plaintiff started a business known as "Julie's Garden" which sold outdoor items at retail. In 1991/1992 the defendant went into a partnership and started a CT Page 3960 business known as "Outdoor Accents." In 1992 the business folded and the parties started the present business known as "Garden Art, Inc." In 1995 the plaintiff closed Julie's Garden and devoted her full-time to Garden Art as did the defendant. The plaintiff was responsible for the bookkeeping and finances and the defendant handled manufacturing and sales. During the early years of the business the parties enjoyed a very good living from the business. In the past year the business has suffered a decline in sales. The court finds that the decline in sales had more to do with the turmoil between the parties as opposed to a general decline in the market.
Their was substantial testimony and exhibits offered by the parties concerning their claims of premarital assets by the defendant and of amounts received from family members by the plaintiff. The orders hereinafter set forth have considered these claims.
The parties marriage in recent years was filled with arguments, mistrust, excessive consumption of alcohol, sexual behavior inconsistent with a heterosexual relationship and inability to cooperate in the running of a business they each owned. Having reviewed the evidence the court finds that each of the parties were responsible for the breakdown of the marriage, with the greater blame being that of the defendant.
In addition to the statutory criteria the court must consider in fashioning its orders, the principal issues concern the valuation of the business and whether either party is capable of operating the business in a manner in which both parties can receive the maximum benefit for their interest. An accountant engaged by the parties submitted a written report dated May 15, 2000 valuing the business at $715,000. However, in his testimony the accountant felt that the value had declined significantly to the point where it no longer had a going business value. Notwithstanding this testimony the plaintiff's proposed orders indicated using a value of $500,000 and that of the defendant's proposed orders of $715,000. The court rejects the values proffered by the accountant and the parties and places a value on the business of $400,000.
Clearly the parties are so estranged that they can no longer work together in the business for their mutual benefit. As previously indicated the plaintiff was primarily responsible for the bookkeeping and the finances of the business whereas the defendant was responsible for the production and sales. During earlier testimony the plaintiff claimed that she didn't want the business but later testified that she did and her proposed orders reflect the latter position.
The court finds that the defendant is better able to continue with the assistance of a bookkeeper. Further, if the business is to survive and be CT Page 3961 profitable the defendant must do a better job at marketing, be more focused on the business and reduce his consumption of alcohol and outside activities.
The court has considered all of the statutory factors in C.G.S. Sections 46b-81, 46b-82, 46b-89 and 46b-62 and other pertinent statutes, earnings and earnings differentials, causes for the breakdown of the marriage and the consequences of the financial awards set forth below. Judgment shall enter dissolving the marriage of the parties on the grounds of irretrievable breakdown. It is further ordered that:
1. ALIMONY:
Neither party shall pay alimony to the other.
2. 175 BERLIN AVENUE #22, SOUTHINGTON, CONNECTICUT:
The plaintiff shall retain all right, title and interest in and to his real property located at 175 Berlin Avenue #22, Southington, Connecticut.
3. 32 TWO MILE ROAD, FARMINGTON, CONNECTICUT:
The real property known as 32 Two Mile Road, Farmington, Connecticut shall be immediately placed on the market for sale with a licensed real estate agent familiar with properties in the Farmington Valley. If the parties are unable to agree upon an agent to list the property within two weeks from the date of this decision then the selection shall be made by agreement of counsel. The court shall retain jurisdiction until such property is sold and the proceeds distributed as hereinafter set forth. There shall be deducted from the gross selling price the real estate commission, all mortgages and liens, conveyance taxes and legal fees and environmental cleanup costs, if any. The balance of the proceeds shall be divided equally between the parties. The plaintiff shall have exclusive possession of the property until its sold and shall pay and be responsible for all costs in connection with the property including, but not limited to, the mortgages, insurance, taxes, utilities and the like.
4. PERSONAL PROPERTY:
Each of the parties shall retain all personal property within their possession and control except that the defendant shall be entitled to remove from 32 Two Mile Road, if he has not already done so, the shotgun, CD player and accessories, gas grill and any and all clothing, personal papers and personal effects.
CT Page 3962
5. BANK ACCOUNTS:
Each of the parties shall retain all of the bank accounts listed on their respective financial affidavits.
6. STOCKS, BONDS AND MUTUAL FUNDS:
Each of the parties shall retain all of the stocks (excluding Garden Art, Inc.) bonds and mutual funds listed on their respective financial affidavits.
7. DEFERRED COMPENSATION PLANS:
Each of the parties shall retain all deferred compensation plans listed on their respective financial affidavits.
8. LIFE INSURANCE:
Each of the parties shall retain all life insurance listed on their respective financial affidavits.
9. DEBTS:
Each of the parties shall be liable for and hold the other harmless from the liabilities listed on their respective financial affidavits.
10. GARDEN ART, INC.:
The plaintiff shall transfer all of her right, title and interest in Garden Art, Inc. to the corporation in consideration of the payments to become due her as hereinafter set forth. The defendant shall retain all of his right, title and interest in the corporation and after the transfer by the plaintiff shall effectively be the sole shareholder of the business.
Upon such transfer the defendant shall cause the corporation to pay to the plaintiff the sums hereinafter set forth and he shall personally guarantee the payment of such sums. Further, the defendant shall cause the corporation to provide the plaintiff with a promissory note evidencing the amounts due together with a security interest in the assets of the corporation which shall be subordinated to existing and future reasonable and necessary borrowings of the business. Upon full payment of all sums due her the plaintiff shall provide the corporation with a release of the security agreement and the promissory note marked "paid in full."
CT Page 3963
The corporation shall pay to the plaintiff the sum of $200,000 in complete payment of her interest in the corporation and the cancellation of any amounts the may be do her as reflected on the books of the corporation. The balance of said sum shall bear interest at the annual rate of 5% with interest payable monthly. Payments of principal shall be as follows: $25,000 within thirty days from the date of this decision and the sum of $4,000 per month thereafter until the full amount of principal and any unpaid interest is paid in full. The corporation shall have the right to prepay the balance due at any time without penalty.
During the period of time the corporation has an obligation to the plaintiff the corporation shall continue to pay the plaintiff's health insurance under COBRA if she so elects until such time as she can obtain health insurance through her employer. Further, the corporation shall continue to pay the lease payments on the vehicle presently being driven by the plaintiff until the present lease expires.
The defendant shall retain the services of Mario Ciampi, the accountant for the corporation, while any monies remain unpaid to the plaintiff. The defendant shall consult with and be guided by the advice he receives from Mr. Ciampi. The defendant shall provide the plaintiff with financial statements and income tax returns of the corporation as they are prepared by Mr. Ciampi. The defendant's salary shall be no greater than $50,000 per year and any employee benefits shall be reasonable and necessary considering the debt due to the plaintiff and economic conditions.
11. ATTORNEYS FEES:
Each of the parties received the sum of $20,000 towards their attorneys fees during the pendency of this action. Neither party is awarded any further counsel fees.
BY THE COURT
JOHN R. CARUSO